UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON
CIVIL ACTION NO. 15-35-DLB

J. RANDY JACKSON                                                            MOVANT

v.

ANDREA GOGEL                                                            RESPONDENT

**REPORT AND RECOMMENDATION[1]**

On March 26, 2015 movant J. Randy Jackson filed a motion to quash a subpoena. Doc. 1. Respondent has filed a response in opposition (doc. 13), to which movant has filed a reply. Doc. 15. After examining the record and applicable law, the Court concludes the motion should be denied.[2]

**Factual and Procedural History**

The essential facts do not appear to be in dispute. In 2014, respondent Andrea Gogel filed an employment discrimination suit against her former employer, Kia Motors Manufacturing Georgia, Inc. ("Kia") in state court in Georgia, alleging claims of discrimination based on race, gender, national origin, and retaliation. That action ("the Georgia case") was removed to the United States District Court for the Northern District of Georgia. Movant J. Randy Jackson, who is in charge of human resources at Kia, was plaintiff's supervisor and was the person who decided to terminate plaintiff's employment. Both Jackson and Gogel were employed previously at Toyota Motor Manufacturing Kentucky, Inc. ("Toyota") and Jackson later recruited Gogel to

---

[1] Normally, a routine discovery dispute would be handled via order. However, the **only** issue in this case is whether the motion to quash should be granted. Consequently, resolution of that issue is dispositive of the entire case.
[2] The Court concludes that oral argument would not be of material assistance in resolving the motion as the parties have set forth sufficiently both the essential facts and law.

1

work for Kia.

As part of discovery in the Georgia case, Gogel's counsel sent a letter to Kia's counsel suggesting search terms for Kia to use in conducting its e-discovery, and some of the suggested search terms were sexual in nature. See Doc. 1-4, p. 19-21. Gogel's counsel suggested those terms because counsel believed the existence of documents containing those terms would be relevant to her gender discrimination claims. The letter also asserted that Gogel is "aware that Randy Jackson circulated offensive pornographic materials on his computer while employed at Toyota." *Id.* at 20.

Kia's counsel then sent a letter to Gogel's counsel denying that Jackson circulated pornographic material while employed by Toyota. Doc. 1-4, p. 23. The letter also opined that the letter from Gogel's counsel was an unfounded, harassing attack on Jackson. *Id.*

Shortly thereafter, Gogel's counsel issued a subpoena duces tecum to Toyota for a Rule 30(b)(6) deposition. The topic of the deposition was to be, essentially, Jackson's disciplinary history at Toyota. The subpoena required Toyota's representative to bring, among other things, Jackson's complete employee file. Doc. 1-3, p. 1-5. Jackson soon thereafter filed the pending motion to quash (which was filed in this district because the deposition was to occur within this district).

**Analysis**

Federal Rule of Civil Procedure 45(d)(3)(A)(iv) requires a court to quash a subpoena which "subjects a person to undue burden." Overbreadth and irrelevance are not specifically mentioned grounds for granting a motion to quash. Nonetheless, "[t]his undue burden category encompasses situations where the subpoena seeks information irrelevant to the case. Moreover,

2

[a] subpoena imposes an undue burden on a party when [it] is overbroad." *Singletary v. Sterling Transport, Inc.*, 289 F.R.D. 237, 240 (E.D. Va. 2012) (quotation marks and citations omitted). Movant contends the subpoena should be quashed because it is overly broad and seeks information irrelevant to the Georgia case.[3]

Toyota has not filed anything in opposition to the subpoena. Consequently, before addressing the merits of the motion the Court must first determine whether movant—who is not required to take any action pursuant to the subpoena--has standing to challenge it. Both nonparties and parties may move to quash subpoenas. *Anderson v. Old Nat. Bancorp*, 2010 WL 5463397, at *2 (W.D. Ky. Dec. 29, 2010). Courts "proceed cautiously" when enforcing a subpoena against a nonparty but "[a] nonparty seeking to quash a subpoena bears the burden of demonstrating that the discovery sought should not be permitted." *Id.* (citation omitted).

Generally, "a party does not have standing to quash a subpoena served on a third party unless the party seeks to quash based on a personal right or privilege relating to the documents being sought." *Maxwell v. Health Center of Lake City, Inc.*, 2006 WL 1627020, at *2 (M.D. Fla. June 6, 2006) (footnote omitted). "In other words, standing exists if the party alleges a 'personal right or privilege' with respect to the subpoenas." *Bahrami v. Maxi Price Chevrolet-Oldsmobile, Inc.*, 2013 WL 3800336, at *2 (N.D. Ga. June 19, 2013) (quotation marks omitted).

"[N]umerous courts from within a wide variety of circuits" have found that a person possesses a personal right in the confidentiality of his/her employment records and, consequently, those courts "have held that such parties have standing to challenge subpoenas

---

3 Though movant mentions overbreadth in passing, he does not address the issue in detail (i.e., he does not raise any specific objection to any specific aspect of the subpoena as being overly broad). The Court, therefore, will address only the relevancy argument, which is the only detailed argument in the motion.

3

directed to their former employers." *Singletary*, 289 F.R.D. at 239 (citing cases). Therefore, the Court concludes movant has standing to seek to quash the subpoena.[4]

Turning to the merits, "[i]t is well-settled that the scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26." *Chamberlain v. Farmington Sav. Bank*, 2007 WL 2786421, at *1 (D. Conn. Sept. 25, 2007). *See also Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) (footnotes omitted) ("It is well settled . . . that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) . . . . Thus, the court must examine whether a request contained in a subpoena duces tecum is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b) and as applied to Rule 34 requests for production."). As one leading treatise summarizes it, the standard for ruling on a motion to quash is:

> a subpoena may be quashed if it calls for clearly irrelevant matter, [but] the district judge need not pass on the admissibility of the documents sought in advance of trial nor quash a subpoena demanding their production if there is any ground on which they might be relevant. . . . [T]he scope of discovery is not limited to matters that are admissible or relevant to the issues formulated in the case but extends to any nonprivileged matter that is relevant to the claim or defense of any party in the pending action. This discovery relevancy standard has been applied to subpoenas in many cases. Of course, the matter sought by the party issuing the subpoena must be reasonably calculated to lead to admissible evidence as is required by the next to the last sentence of Rule 26(b)(1).

9A Fed. Prac. & Proc. Civ. § 2459 (3d ed.) (2014) (footnotes omitted).

Respondent asserts that because movant was the person who made the decision to terminate her employment at Kia, his attitude toward women in the workplace is at issue. According to respondent, she thus "is entitled to this discovery to determine not only the veracity

---

4 Respondent asserts that movant lacks standing because there is a protective order extant in the Georgia case. However, respondent cites to no case holding that the mere existence of a protective order prohibits the filing of a motion to quash in these circumstances.

4

of [Kia's] denial that Mr. Jackson ever engaged in the behavior Ms. Gogel believed that he did engage in, but to fully explore the circumstances surrounding Mr. Jackson's departure from Toyota to see if he engaged in any type of discrimination against women at his previous place of employment." Doc. 13, p. 15.

Movant's argument to the contrary notwithstanding, respondent is not merely engaging in a fishing expedition. Respondent has explained that she has reason to believe that movant sent a sexually-oriented email to an attorney who worked with Toyota. The email in question, if it exists, may or may not prove ultimately to be admissible. However, discovery regarding whether respondent engaged in inappropriate, sexually explicit behavior during his former employment is relevant to show movant's attitude about females in the workplace, which is important when considering whether that attitude played a role in movant's decision to terminate respondent.[5]

Movant has not buttressed his unsupported claim that the sole purpose of the subpoena is to harass or demean him in Kia's eyes. Respondent personally has to take no action regarding the subpoena and Kia already knows—or reasonably should already know-- respondent's employment record with Toyota. In short, though movant speculates that the only purpose of the subpoena was to harass him, there is nothing tangible in the record to support that assertion.

The Court also declines movant's entreaty to view the timing of the subpoena as being inherently suspicious. The subpoena unsurprisingly was issued close in time to the disagreement

---

5 The Court is aware that respondent has not claimed she was sexually harassed and the email in question—if it exists--was not sent by movant to a subordinate. Though those distinctions may factor into an ultimate decision on the admissibility of the email (or the weight which it should be afforded if it is admissible), the Court cannot say that the distinctions mean movant's employment file is completely non-discoverable, especially in light of the fact that Kia likewise has sought respondent's employee files from her previous employers. Similarly, the fact that movant's employee file dates from numerous years ago would perhaps affect the admissibility of its contents but does not make the file wholly non-discoverable.

about the propriety of the search terms suggested by respondent's counsel and goes along with the basic gist of respondent's request to determine if movant has engaged in sexually inappropriate behavior, at both Kia and/or Toyota.[6] In addition, the motion was filed before the expiration of discovery in the Georgia case.

In short, given the permissive, liberal nature of discovery, the Court should deny the motion to quash. Moreover, as the motion to quash is the only issue in this case, the Court should dismiss the case after issuing a final ruling on the motion.

**Conclusion**

For the foregoing reasons, **IT IS RECOMMENDED:**

1. The motion to quash [Doc. 1] should be **denied**; and

2. This case should be dismissed upon the issuance of a final ruling on the motion to quash. A courtesy copy of this report and recommendation, as well as any order on the merits issued by the presiding district judge, should be mailed to United States District Judge Timothy C. Batten, Sr., 2142 Richard B. Russell Federal Building and United States Courthouse, 75 Spring Street, SW Atlanta, GA 30303-3309, who is presiding over *Gogel v. Kia Motors Manufacturing of Georgia, Inc.,* Case No. 3:14-cv-00153-TCB-RGV in the United States District Court for the Northern District of Georgia.

---

6 Attached to movant's reply is the affidavit of a paralegal at movant's counsel's office stating that she reviewed over two thousand emails sent by movant during his tenure with Kia but did not find any offensive/derogatory remarks toward women. Doc. 15-2. The fact that movant's Kia email archives apparently did not contain such terms does not, however, foreclose respondent from seeking to discover whether movant sent a sexually explicit email while he was employed by Toyota.

This the 22nd day of April, 2015.



Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge